UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

V.S., by his parent, D.S.

                       Plaintiffs,

– against –

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                       Defendant.

ORDER

13-CV-3476

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 10 2014 ★

BROOKLYN OFFICE

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I. Introduction ........................................................................................................................... 2

II. Facts ...................................................................................................................................... 3

III. Law ....................................................................................................................................... 4

   A. Statutory Framework ..................................................................................................... 4

   B. Judicial Review .............................................................................................................. 5

IV. Application of Law to Facts .................................................................................................. 6

   A. Review of the Administrative Decisions ....................................................................... 6

   B. Burlington/Carter Test ................................................................................................... 9

      1. Marathon School ....................................................................................................... 9

      2. Rebecca School ....................................................................................................... 10

      3. Consideration of the Equities ................................................................................. 11

   C. Prevailing Party ............................................................................................................ 11

V. Conclusion .......................................................................................................................... 11



## I. Introduction

D.S., on behalf of her son, V.S., sues the New York City Department of Education ("DOE") for failing to provide a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Improvement Act ("IDEA") for the 2011-2012 school year. *See* 20 U.S.C. § 1400, *et seq.*

Plaintiffs seek reversal of the decision by the State Review Officer ("SRO"), who found that the DOE offered V.S. a FAPE for the 2011-2012 school year. Both parties move for summary judgment. A hearing was conducted. *See* ECF No. 41 (May 28, 2014).

The parent was given notice that her autistic child would be placed in a particular school, specified by name and geographic location. *See* Final Notice of Recommendation, ECF No. 23. She made a good-faith effort to determine if that school was appropriate by visiting the physical school referred to in the notice she received, concluded that it was not because it dealt with much older children, filed a complaint with the DOE, and received no response.

At an administrative hearing, the DOE prevailed by defending the merits of a physically different school located at a different location on the theory that it was to this different location that the child would ultimately have been sent and that it was satisfactory for the child's needs.

The critical issue now posed is whether evidence regarding the adequacy of a particular school assignment is limited to the school for which plaintiffs received notice and thereafter reasonably determined was inadequate. The process relied upon by defendant is colorfully referred to as a "bait and switch" assignment.

Local education agencies, strained by limited physical infrastructure and significant financial constraints, must have enough flexibility to accommodate a changing student body with diverse and, at times, conflicting needs. At the same time, students with disabilities and their

2

parents—if they are to adequately protect their child's access to appropriate educational opportunities—must be afforded the right to challenge a particular school assignment. Under the particular circumstances here, with no attempt to keep the parent apprised of the assigned school so that it could be visited, there was a denial of due process. Permitting the local education agency to give advance notice of one school but to defend another does not comport with the hearing required under the IDEA.

## II. Facts

In the summer of 2011, V.S. was an autistic 11 year old enrolled in the private Rebecca School. In preparation for the new school year, an Individualized Education Program ("IEP") for V.S. was mailed to D.S. on April 6, 2011. On June 11, 2011, the DOE issued a Final Notice of Recommendation ("FNR") proposing placement for V.S. at a particular public school: "P811Q @ Marathon School -- 61-25 Marathon Parkway, Little Neck, NY 11362." *See* FNR, ECF No. 23.

Based on the FNR, D.S. visited the Marathon School on June 20, 2011. In a letter to the DOE dated June 29, 2011, she explained that the Marathon School was inappropriate for V.S. because, among other reasons, the students at the school were in a much older age group. She therefore kept V.S. enrolled at the Rebecca School for 2011-2012 and sought reimbursement from the DOE. On September 27, 2011, D.S. filed a demand for due process, alleging that the DOE failed to provide V.S. a FAPE for the 2011-2012 school year. Both procedural and substantive defects were claimed.

On May 14, 2012, an impartial hearing officer ("IHO") issued a decision. The IHO concluded that V.S. was offered a FAPE for the 2011-2012 school year because both the IEP and the school site were adequate. At the hearing, the DOE presented evidence that P811Q @

Marathon School ("the Marathon School"), located in Queens, NY, is one of multiple school sites for P811Q. Although the FNR lists P811Q @ Marathon School, V.S. would have actually been placed at an entirely different physical school, P811Q @ Q822 ("Q822"), located in St. Albans, NY. The IHO found that "the placement offered on the FNR . . . was the same one that the student would have been enrolled [*sic*] during the 2011-12 school year." *See* IHO Decision, 10. It therefore made its decision based on the characteristics of Q822, not the Marathon School that the parent had properly visited and complained of. *See id.*; Tr. 220.

Plaintiffs appealed from the decision of the IHO to the State Review Officer ("SRO"). On March 22, 2013, the SRO upheld the findings of the IHO and dismissed the appeal. On the school placement issue, the SRO held that a change from the Marathon School to Q822 was "a *future change* in school buildings," which is not actionable under the IDEA. *See* SRO Decision, 27 (emphasis added).

## III. Law

### A. Statutory Framework

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C.A. § 1400(d)(1)(A) & (B). Special education services are administered according to an individualized education program ("IEP"), a planning document that sets out the children's educational performance, goals, and required services. *See* 20 U.S.C. § 1414(d)(1)(A).

Parents dissatisfied with their child's FAPE may unilaterally place their child in a private school and then seek reimbursement from the local education agency. *See* 20 U.S.C. § 1412(a)(10)(C). To determine whether parents are entitled to reimbursement, courts apply the three-pronged *Burlington/Carter* test, "which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities." *C.F. ex rel. R.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014). The DOE bears the burden of establishing that it provided a FAPE; the parents bear the burden of establishing that the private placement is appropriate. *Id.*, at 76 (citing N.Y. Educ. Law § 4404(1)(c)).

The ability of the DOE to assign students to particular schools is limited by two requirements. First, "parents have a procedural right to evaluate the school assignment, *i.e.*, the right to acquire relevant and timely information as to the proposed school." *See G.U. v. N.Y. City Dep't of Educ.*, 13-CV-5209 (S.D.N.Y., May 27, 2014), *37 (citing *Honig v. Doe*, 484 U.S. 311-12 (1988); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)). Second, the school must be capable of implementing the IEP. "The Department may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP." *R.E. v. N.Y. City Dep't. of Edu.*, 694 F.3d 167, 191-2 (2d Cir. 2012).

B.   **Judicial Review**

Although styled a motion for summary judgment, the parties in effect are prosecuting an administrative appeal. *See Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005). The court is required to base its decision on the preponderance of the evidence and gives substantial weight to the outcome of state administrative proceedings. *T.P. ex. Rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per

curiam). "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review." *C.F. ex rel. R.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (citation omitted).

## IV.   Application of Law to Facts

### A.   Review of the Administrative Decisions

Plaintiffs allege that the DOE's FAPE was inadequate because the students at the Marathon School were in a much older age group than V.S.—adolescents—making the school inappropriate for this pre-adolescent child. Their theory, as presented by their attorney, is that the DOE pulled a "bait and switch" by designating one school but then defending another. *See* Pls.' Mem., 12-14, 17-18, ECF No. 28. The DOE counters that since V.S. would have actually been placed at Q822, testimony about that school is relevant to the implementation of the IEP. In addition, the DOE argues that notice of the change in school sites was not required because parents do not have a right to determine the specific school their child attends. *See* Def.'s Mem., 23-26, ECF No. 35. *See also T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009) ("'Educational placement' refers to the general educational program—such as the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school.").

The SRO and the IHO erred in two respects. First, testimony regarding Q822, the substituted school—should have been excluded as retrospective, that is, beyond the scope of the IEP and its implementation. *See R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167, 186 (2d Cir. 2012). Retrospective testimony is forbidden because "[p]arents must have sufficient information

about the IEP to make an informed decision as to its adequacy prior to making a placement decision." *Id.*

The SRO and the IHO permitted this testimony because the Marathon School and Q822 are both, in theory, but not physically, part of P.S. Q811. They are different school sites with different staff, different student bodies, and different facilities. Under defendant's view, a parent must agree to the DOE's recommended school site knowing that it is inappropriate, enroll her child in that school site, and then wait and see if the student will actually be assigned to an appropriate school site. This is antithetical to the IDEA's reimbursement process. *See Forest Grove Sch. Dist. V. T.A.*, 557 U.S. 230, 239 ("[The IDEA gives] courts broad authority to grant appropriate relief, including reimbursement for the cost of private special education when a school district fails to provide a FAPE."); 20 U.S.C. § 1412(a)(10)(C)(ii) ("[A] court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment."). It distorts the smooth, transparent processing of transitions from school year to school year and prevents timely interventions by the parent to protect the child.

The authority cited by the DOE applies to the entirely different situation when a student is transferred from a school site that conforms to the IEP to another school site that also conforms to the IEP. *See, e.g., K.L.A. v. Windham Se. Supervisory Union*, 371 F. App'x 151, 155 (2d Cir. 2010) (affirming district court holding that transfers between schools are acceptable when both schools are able to implement the IEP); *Concerned Parents & Citizens for the Continuing Ed. at Malcolm X (PS 79) v. N.Y. City Bd. of Ed.*, 629 F.2d 751, 756 (2d Cir. 1980) (finding that no notice is required when "transferred handicapped students remain in the same

7

classification, the same school district, and the same type of educational program special classes in regular schools."); 71 Fed. Reg. 46588 (Aug. 14, 2006) ("[A] public agency may have two more equally appropriate locations that meet the child's special education and related services needs and school administrators should have the flexibility to assign the child to a particular school or classroom, provided that determination is consistent with the decision of the group determining placement."). The DOE does not argue that the Marathon School of which notice was given was an appropriate placement. Rather, it claims that V.S. would have ended up at a different school site that would have been appropriate.

Depending on the needs of the student, the characteristics of the specific school site can be an important factor in assessing the adequacy of the IEP and its implementation. *See, e.g., T.L. v. N.Y. City Dep't of Educ.*, 938 F.Supp.2d 417, 436-7 (E.D.N.Y. 2013) (remanding to the SRO for consideration of "the effect of the school's facilities and environment" because "the physical environment itself must be suitable for the child."). Parents must rely on the FNR and other notices to determine if a proposed location is appropriate for their child's IEP. According to the FNR sent to D.S., the DOE offered placement at a particular "site and address," which was listed as "P811Q @ Marathon School." D.S. received no notice in the FNR, during her site visit, or after the site visit that V.S. would have actually been placed in Q822, a different school site. Evidence of another school site with substantially different characteristics is prohibited here as retrospective. *See D.C. ex rel. E.B. v. N.Y. City Dep't of Educ.*, 950 F. Supp. 2d 494, 510 (S.D.N.Y. 2013) ("Although the issue in this case is the capability of the proposed placement to implement the IEP, not the suitability of the IEP itself, the reasoning of *R.E.* compels the same result for retrospective testimony in this context as well."); *B.R. ex rel. K.O. v. N.Y. City Dep't of Educ.*, 910 F. Supp. 2d 670, 677 (S.D.N.Y. 2012) ("[T]he Court evaluates whether, at the time

8

[the parent] was actually considering the proposed placement, the school could offer [services] in line with the IEP.").

The SRO and the IHO erred by failing to consider the parent's right to meaningfully participate in the school selection process, as opposed to the parent's right to determine the actual school selection. *See G.U. v. N.Y. City Dep't of Edu.*, 13-CV-5209 (S.D.N.Y., May 27, 2014), *39. D.S. was not given notice of Q822, and she received no response from the DOE after sending a letter listing her objections to the Marathon School. It was only at the hearing before the IHO—held six months after the beginning of V.S.'s school year—that D.S. was informed that V.S. would have attended Q822. D.S. was therefore denied her right to evaluate the child's school site when the DOE directed her to inspect a school her child would not attend.

### B. Burlington/Carter Test

#### 1. Marathon School

On the ground that V.S. would have been placed at Q822, neither the IHO nor the SRO determined whether the Marathon School was an appropriate placement for V.S. Testimony at the hearing established that it is not. Diana Parisy, the assistant principal at P.S. Q811, explained that the Marathon School was not age appropriate. V.S. was a pre-pubescent 11 year old at the time, but students at the Marathon School were almost all 14 years old or above. *See* Tr. 481:13-22 ("I would call the Placement Officer and remind him that we do not have students that age at this site. . . . We might have one, but they are in classes . . . where there is more than a three year gap."); Tr. 487:14-16 ("I would have said that we have no other students of his age, in an appropriate class."). *See also* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(5) ("The chronological age range within special classes of students with disabilities who are less than 16 years of age shall not exceed 36 month.").

## 2. Rebecca School

To receive reimbursement, a parent's unilateral placement must be at an appropriate site. The private school does not need to meet the IDEA criteria, but courts look to the same standards for guidance. *Frank G. v. Board of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir., 2006). "Ultimately, the issue turns on whether a placement—public or private—is reasonably calculated to enable the child to receive education benefits." *Id.* (internal quotation marks omitted).

The Rebecca School's Interdisciplinary Report of Progress Update ("Progress Report") for V.S., dated December 2011, details V.S.'s program and the progress he has made. V.S. is in a class with an 8:1:3 ratio of teachers to student to paraprofessionals. The class employs the Developmental Individual Difference Relationship-based (DIR) model. On a daily basis, he receives instruction in math, English, and social studies, as well as individual and small group Floortime sessions. He also receives occupational, speech-language, and music therapy at the Rebecca School. *Cf. N.Y. City Dep't of Educ. v. V.S.*, 2011 WL 32733922 (E.D.N.Y. 2011) (finding that the Rebecca School was appropriate for V.S. in the 2008-2009 school year).

The Progress Report indicates that V.S. has made progress in social, emotional, and academic realms. Detailed evaluations of V.S.'s performance describe his substantial improvements, as well as continuing difficulties, in each area. This assessment is supported by testimony at the hearing. The program director, teacher, and various therapists explained how the Rebecca School has provided an environment conducive to V.S.'s development. Significant factors included teaching methodology, class size, student body population, physical equipment, and related services. *See e.g.*, Tr. 237-9, 268-9, 664, 673.

### 3. Consideration of the Equities

Equitable considerations favor reimbursement. D.S. promptly and diligently pursued her right to participate in the child's FAPE, while also cooperating with the DOE at each stage. In less than three weeks, she received the FNR, visited the Marathon School, and mailed her notice of objection and unilateral placement. Relying on all available information, she made a reasonable decision. She did not delay in notifying DOE.

There is no justification for reducing the amount of reimbursement. *See* 20 U.S.C. § 1412(a)(10)(C)(iii) (setting forth reasons why the court may reduce reimbursement).

### C. Prevailing Party

The plaintiffs are the prevailing party. *See* 20 U.S.C. § 1415(i)(3)(B) (permitting the court to award attorneys' fees to the prevailing party); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (defining prevailing party as "one who has been awarded some relief by the court"); see also *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir.2005) ("... *Buckhannon* applies to the IDEA." (citing *J.C. Regional Sch. Dist.* 10, 278 F.3d 119, 124 (2d Cir.2002)). Plaintiffs shall submit an application for legal fees to the magistrate judge.

## V. Conclusion

V.S. was not provided a FAPE because his placement at the Marathon School did not conform to his IEP and his parent was not provided an opportunity to evaluate his actual proposed school site. It is not necessary to reach the issue of whether the IEP document was deficient.

Plaintiffs' motion for summary judgment is granted. Defendant's motion for summary judgment is denied. Legal fees and disbursements are granted.

SO ORDERED.

*Jack Weinstein* (signature)

Jack B. Weinstein
Senior United States District Judge

Dated: June 9, 2014
Brooklyn, New York